Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2018 3:13 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 1 of 12 PageID #: 4

| | |
|---|---|
| **STATE OF RHODE ISLAND**<br>**PROVIDENCE, S.C.** | **SUPERIOR COURT** |
| | CA NO: |
| ANTHONY AMBROSINO, | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| *Plaintiff,* | |
| vs. | |
| BULLARD ABRASIVES, INC., | |
| *Defendant.* | |

## COMPLAINT

This action is commenced by ANTHONY AMBROSINO (hereinafter "Plaintiff") against BULLARD ABRASIVES, INC. (hereinafter "Defendant") to remedy and seek relief for unlawful employment practices arising under *The Rhode Island Whistleblowers' Protection Act*, R.I. Gen. Law § 28-50-1, *et seq.* ("WPA").

### PARTIES

1. Plaintiff presently resides in the city of Coventry, county of Kent, within the State of Rhode Island and formerly worked for Defendant at its Lincoln, Rhode Island location.

2. Bullard Abrasives, Inc. is a domestic profit corporation doing business in the State of Rhode Island with a principal place of business located in the city of Lincoln, county of Providence, within the State of Rhode Island.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over the Plaintiffs claims pursuant to R.I.G.L. § 42-46-8.

1

Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2018 3:13 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 2 of 12 PageID #: 5

4. Venue is proper in accordance with R.I.G.L. § 9-4-3 insofar as the Defendant resides in the County of Providence.

## FACTUAL ALLEGATIONS

5. On or around August 2, 2016, Plaintiff interviewed with Bullard Abrasives ("Defendant"), specifically with Hector and Craig who are leadership at Defendant.

6. During the interview, they walked around the plant and Plaintiff raised issues regarding machine guarding and safety.

7. During the interview, it was verbally agreed upon that improvements would be made to machine guarding and safety.

8. During the interview, Hector and Craig admitted to safety violations reported by Plaintiff.

9. On or around August 9, 2016, Plaintiff began working at Defendant and was introduced to George who was running maintenance at the time.

10. At the time Plaintiff began working, he received no safety training or information regarding procedures.

11. During Plaintiff's first few weeks of work, he learned there was very few safety protocols implemented.

12. For example, there was no training provided to employees with respect to hazardous energy sources and the lock-out-tag-out procedures.

13. Further, Plaintiff learned that there was no system or protocol for handling heavy-duty, dangerous machinery and each employee handled the machinery differently.

14. The heavy-duty, dangerous machinery included multi-ton presses and grinding machines.

15. Some of the heavy-duty, dangerous machinery was also lacking proper guarding to protect against the injury of employees and contractors.

2

Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2018 3:13 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 3 of 12 PageID #: 6

16. During the first few weeks, Plaintiff learned about an employee or contactor who had lost the end of his middle finger on his right hand; it was amputated by press 6.

17. On or around September 12, 2016, Plaintiff's primary focus was bringing press 6 online.

18. Plaintiff worked with Wolfgang, the programmer, to get the machine operational by March of 2017.

19. Plaintiff reported to Hector several times about adding protective equipment/processes to the machinery including adding guarding to the machinery.

20. Each time Plaintiff reported to Hector the need for increases in safety for equipment or processes, Plaintiff was redirected by Hector to perform alternate work.

21. Plaintiff began talking to the production supervisors and other mechanics about the machinery and their responses were "they will never take the machines down to let you do that."

22. During the commissioning of press 6, one of the board members/ co-owners, Richard Whyte Sr., stated he was worried about the operator of the machine having her hands near the moving machine.

23. Hector responded, "this is how it is done on all the presses."

24. In or around February 2017, Plaintiff was asked to automate a glue press.

25. Plaintiff insisted on a purchase of two-hand controls for the machine to increase safety.

26. Hector expressed displeasure with Plaintiff request for the purchase.

27. After an unpleasant interaction with Hector, Plaintiff was finally allowed to purchase the two-hand controls.

28. Around this same time, Plaintiff again reported to Hector that guarding was needed for the machinery because of the safety risk and lack of compliance with safety laws.

29. Hector responded to Plaintiff that there would be no guarding provided for machines.

Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2018 3:13 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 4 of 12 PageID #: 7

30. From about March 6, 2017 to about May 18, 2017, Plaintiff's work was changed from almost exclusively work on the presses; instead Plaintiff was assigned to a test stand upgrade.

31. During that time, Plaintiff witnessed Madri, the floor supervisor opening a gallon of a new solvent.

32. Plaintiff believed that the solvent contained Meth Ethel Ketone (MEK) which was believed by Plaintiff to be dangerous and improper.

33. Plaintiff immediately informed Madri of the danger.

34. Plaintiff also told Fran Espaseo about the incident who told Plaintiff to speak with Hector.

35. Plaintiff reported the believed safety violation to Hector.

36. Hector again was displeased with Plaintiff's safety report.

37. Hector responded, "well they used it in Chicago" and took no other action.

38. On or around June 13, 2017, after an accident where an employee had his hand caught in a pneumatic forming press, Plaintiff was allowed to install two-hand controls on a forming press.

39. Plaintiff again reported the believed safety violations regarding guarding to Defendant's leadership, including Hector.

40. After several attempts to report believed safety violations, Plaintiff was treated dismissively and disparagingly by Hector.

41. Plaintiff sent Hector an email on or about June 28, 2017, with a link to the OSHA page outlining the guarding requirements for industrial machines.

42. Over the next several months Plaintiff installed two-hand controls on presses with no guarding.

43. As a result of this action, Plaintiff was treated disparately and poorly by Hector.

44. Hector did not give Plaintiff assignments for two months as retaliation for Plaintiff's safety concerns and reports.

Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2018 3:13 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 5 of 12 PageID #: 8

45. From about June 16, 2017 to about June 26, 2017, Plaintiff was asked to provide an analysis of two of the presses, press 11 and press 12, and make a plan for them to run faster and more efficiently.

46. As part of that process Plaintiff reported and suggested remedies for a variety of safety concerns.

47. Plaintiff wrote an analysis to show the inconsistencies in training, material, quality control, and record keeping which needed to be addressed for purposes of safety and compliance.

48. As a direct and proximate result of this report, Hector stopped giving Plaintiff work.

49. Plaintiff found himself with time on his hands and believed this was retaliation for his report about additional safety concerns.

50. On or around June 28, 2017, after the operator of press 6 got a hand caught in the fiber glass station 1, Plaintiff felt he had a duty to address safety issues of press 6.

51. Plaintiff spent the many hours translating, identifying, and working on an input output list for press 6.

52. The first draft of Plaintiff's safety report was sent to Hector on or around September 15, 2017.

53. On or around September 28, 2017, after a power outage in the plant where Plaintiff photographed the emergency lights out, Plaintiff sent an email to Mark Luka, the former maintenance manager, with all the pictures attached.

54. Despite Plaintiff's efforts, Defendant still did nothing to remedy the safety issues.

55. On or around October 6, 2017, the analysis of press 11 and press 12 that Plaintiff created for Hector was forwarded to Craig Pickle.

56. On or around late October 2017, Plaintiff witnessed several additional safety concerns including not being allowed to buy parts required for safety, a mechanic doing electrical work which resulted in improper work and no lock-out tag-out completed, and other safety concerns, many of which were not new.

Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2018 3:13 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 6 of 12 PageID #: 9

57. Plaintiff reported these safety concerns to Hector.

58. Again, Hector was not pleased with Plaintiff's report and dismissed Plaintiff's complaints.

59. On or around October 20, 2017, Plaintiff was instructed to get two AbraPress weighing machines running.

60. As the machines where imported from Italy, Plaintiff was careful about the power requirements.

61. Hector got upset with Plaintiff when Plaintiff brought the power requirement to his attention.

62. Plaintiff was prohibited from completing his work to make the machine operate safely and when he later returned to the machine, Plaintiff found the machine running.

63. Scott informed Plaintiff that Hector had come to work on the machine while Plaintiff was away from it.

64. This connection done by Hector left what should have been the neutral wire completely unprotected.

65. Again, Plaintiff reported this safety concern to Hector.

66. Hector was again dismissive of Plaintiff's reports of concerns.

67. Hector responded "it works."

68. The final draft of Plaintiff's safety report was sent to Defendant leadership on or around October 23, 2017.

69. During November of 2017, Plaintiff witnessed more safety violations and concerns such as a pallet fall on Madri, the second-shift press 6 operator, Raquel, receiving stiches after being injured in an attempt to remove a piece of misplaced glass from a machine (the same type of machine that resulted in another employee's finger being amputated previously), worn parts in machines causing malfunction, and other safety concerns.

70. Plaintiff again reported said concerns to no avail.

Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2018 3:16 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 7 of 12 PageID #: 10

71. Soon after that, Defendant started running extended hours which made remedying safety concerns even harder.

72. Plaintiff tried to work the hours the machines were down but quickly came to realize there was little Plaintiff was going to be able to do solve the numerous, continued safety issues.

73. On or around December 27, 2017, Plaintiff was asked to take over for a Billy, the mechanic, to address a problem on press 12.

74. Plaintiff believed the eject was failing and the machine was violently popping at times.

75. Plaintiff did his best to correct the problem but Plaintiff believed the problem was worn tooling.

76. The second-shift operator refused to stop the machine.

77. Plaintiff, at this point, after months of unremedied safety concerns, felt it was his duty to report the safety violations to an outside agency, OSHA, since multiple reports to Defendant leadership failed to correct the many believed safety violations Plaintiff had witnessed and reported.

78. On or around December 27, 2017, Plaintiff filed a complaint with OSHA regarding safety issues in Defendant's work environment.

79. On or around December 27, 2017, at specifically 9:34 PM, Plaintiff also sent an email to management/leadership including Hector, Craig, and Richard, once again reporting the safety issues in the work environment that he had frequently voiced throughout his employment.

80. In this same email Plaintiff reported the retaliatory events and dismissive treatment he had suffered after Plaintiff had made prior reports of believed safety violations.

81. In this same email Plaintiff reported to management/leadership that OSHA required guarding on equipment just as Plaintiff had repeatedly reported to management as a needed remedy.

82. The reports to OSHA and the reports to management/leadership is a protected activity under the Rhode Island Whistleblower Protection Act.

Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2018 3:16 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 8 of 12 PageID #: 11

83. The email also included reported violation of 20 C.F.R. 516.4, which requires up-to-date postings for minimum wage, which is a protected activity under the FLSA, specifically § 218(a)(c)(5).

84. The email specifically reported actions by Defendant that Plaintiff believed, under the FLSA, safety regulations, and state law, were violative of law and regulation.

85. On or around December 27, 2017 at 11:58 PM, only 2.5 hours after Plaintiff's 9:34 PM email reporting OSHA, FLSA, and state law/safety regulation violations, Plaintiff was terminated by email.

86. The termination email was sent by Craig, President and CEO of Defendant.

87. The email by Craig was harassing and intimidating.

88. Specifically, Craig's email stated "[f]rom this moment forward you are hereby advised that you are barred from the property unless access is pre-authorized by either Hector or me."

89. Craig's email further threatened "[a] charge of trespass with criminal intent and a restraining order will be sought if you come on the property."

90. Upon information and belief, Defendant was cited by OSHA.

91. The email finally warned that "[a]ny actions by you *to disrupt our business activities* will be subject to immediate legal action." (emphasis added).

92. As a direct and proximate result of the unlawful retaliatory treatment and harassment, as well as Plaintiff's termination, Plaintiff suffered lost employment, income, and earning capacity; he suffered loss of work-related benefits, privileges, promotions, and status; he suffered other economic harm; he suffered humiliation, loss of standing in the community, and harm to his reputation; he suffered and continues to suffer from extreme emotional distress and mental anguish resulting in physical injury; and suffered other injuries. All damages continue to date.

Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2018 1:16 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 9 of 12 PageID #: 12

## COUNT ONE
### *RETALIATORY TERMINATION*
*Violation of Fair Labor Standards Act of 1938, 29 U.S.C. § 215(a)(3) (FLSA))*

93. Plaintiff incorporates by reference ALL Paragraphs above as if fully set forth herein.

94. Defendants are subjected to the requirements of FLSA and therefore Plaintiff was afforded protections of 29 USC § 207(r) and 29 USC § 215(a)(3).

95. An employer that discriminates against or discharges an employee in retaliation for an employee's complaint or protected conduct related to the FLSA is in violation of the FLSA.

96. Plaintiff exercised his rights under FLSA when he complained about the out of date wage and hour posters to the leadership of his company; such a lack of postings is a violation of 20 CFR 516.4.

97. In response to Plaintiff exercising his rights by complaining about the out of date wage and hour posters, Defendant retaliated against Plaintiff by terminating Plaintiff just a couple hours after the complaint.

98. Defendant's actions were in violation of 29 USC § 215(a)(3).

99. But for Defendant's agents' retaliatory conduct, Plaintiff would not have been terminated.

100. Plaintiff experienced the damages aforesaid as a proximate result of Defendant's agents' intentional conduct.

101. Defendant is vicariously responsible for the acts and omissions of its agents under Respondeat Superior.

## COUNT TWO
### *RETALIATORY TREATMENT AND HARASSMENT*
*Violation of the Rhode Island Whistleblowers' Protection Act (WPA), R.I. Gen. Law § 28-50-1, et seq.*

102. Plaintiff incorporates by reference ALL Paragraphs above as if fully set forth herein.

Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2018 3:18 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 10 of 12 PageID #: 13

103. Plaintiff was afforded protections from retaliatory harassment, disparate treatment, and termination because of taking part in a protected activity under the WPA.

104. Plaintiff engaged in protected conduct when he reported what he reasonably believed to be a violation of law, regulation, or rule, internally and externally; by said acts, Plaintiff exercised his rights under the WPA.

105. As a result of Plaintiff's protected activity, Plaintiff was subjected to retaliatory harassment and other retaliatory treatment by Defendant's agents in retaliation for the protected acts.

106. But for Defendant's agents' retaliatory conduct, Plaintiff would not have been harassed and experienced disparate treatment.

107. Defendant's agents' retaliatory conduct, policies, and practices were intentionally retaliatory, motivated by animus, impermissible and unlawful considerations and violate, *inter alia*, WPA.

108. Plaintiff experienced the damages aforesaid as a proximate result of Defendant's agents' intentional conduct.

109. Defendant is vicariously responsible for the acts and omissions of its agents under Respondeat Superior.

## COUNT THREE
### RETALIATORY DISCHARGE
*Violation of the Rhode Island Whistleblowers' Protection Act (WPA), R.I. Gen. Law § 28-50-1, et seq.*

110. Plaintiffs incorporate by reference ALL Paragraphs above as if fully set forth herein.

111. Plaintiff was afforded protections from retaliatory termination because of taking part in a protected activity under the WPA.

Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2020 3:18 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 11 of 12 PageID #: 14

112. Plaintiff engaged in protected conduct when he reported what he reasonably believed to be a violation of law, regulation, or rule, internally and externally; by said acts, Plaintiff exercised his rights under the WPA.

113. As a result of Plaintiff's protected activity, Defendant's agents terminated Plaintiff.

114. But for Defendant's agents' retaliatory conduct, Plaintiff would not have been terminated.

115. Defendant's agents' retaliatory conduct, policies, and practices were intentionally retaliatory, motivated by animus, impermissible and unlawful considerations and violate, *inter alia*, WPA.

116. Plaintiff experienced the damages aforesaid as a proximate result of Defendant's agents' intentional conduct.

117. Defendant is vicariously responsible for the acts and omissions of its agents under Respondeat Superior.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a. Order judgment for Plaintiff against Defendant on all Counts of the Complaint and declare that the practices detailed in this Complaint are unlawful;

b. Order, for all applicable Counts, that Defendant make Plaintiff whole by awarding appropriate back pay with interest, front pay, compensation for all other lost income and benefits, earning capacity, and all other relevant entitlements and emoluments;

c. Order, for all applicable Counts, that Plaintiff be awarded an amount of money which will fairly compensate him for her mental anguish, emotional pain and suffering, damage to his reputation, loss of standing in the community, and other damages incurred;

d. Order, for all applicable Counts, that the Defendant pay Plaintiff's costs and reasonable attorney's fees resulting from this action;

Case Number: PC-2018-7796
Filed in Providence/Bristol County Superior Court
Submitted: 10/30/2018 3:18 PM
Envelope: 1778870
Reviewer: Lynn G.

Case 1:19-cv-00017-WES-LDA   Document 1-1   Filed 01/16/19   Page 12 of 12 PageID #: 15

e. Order, for all applicable Counts, that the Defendant pay punitive or exemplary damages, as appropriate to punish Defendant for their malicious conduct, recklessness conduct, and/or callous indifference to the statutorily and common law protected rights of Plaintiff;

f. Order, for all applicable Counts, that Defendant pay post-judgment interest where appropriate and allowable by law;

g. Order, for all applicable Counts, that Defendant pay pre-judgment interest, including interest for all damages awarded to Plaintiff from the date the cause of action accrued, where appropriate and allowable by law;

h. Retain jurisdiction of this action to ensure full compliance; and

i. Order, for all Counts, such other relief to Plaintiff as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

*PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE*

October 30, 2018

**Anthony Ambrosino,**
By his attorney,

/s/ Paige Munro-Delotto
Paige Munro-Delotto, Ph.D., Esq. #9291
Munro-Delotto Law, LLC
400 Westminster Street, Ste. 200
Providence, RI 02903
(401) 521-4529
(866) 593-9755 (fax)
Email: Paige@pmdlawoffices.com
*Counsel for Plaintiff*